# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## OWENSBORO DIVISION
## CIVIL ACTION NO. 4:18 CV-00055-HBB

**VICKIE L. GORDON**                                                                 **PLAINTIFF**

**VS.**

**NANCY A. BERRYHILL, Acting**
**Commissioner of Social Security**                                         **DEFENDANT**

## MEMORANDUM OPINION
## AND ORDER

### BACKGROUND

Before the Court is the complaint (DN 1) of Vickie L. Gordon ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). Both the Plaintiff (DN 13) and Defendant (DN 18) have filed a Fact and Law Summary. For the reasons that follow, the final decision of the Commissioner is **REVERSED** and this matter is **REMANDED**, pursuant to 42 U.S.C. § 405(g), to the Commissioner for further proceedings.

Pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 11). By Order entered July 17, 2018 (DN 12), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted. No such request was filed.

<u>FINDINGS OF FACT</u>

Plaintiff protectively filed applications for Disability Insurance Benefits and Supplemental Security Income on September 2, 2014 (Tr. 15, 187, 194).   Plaintiff alleged that she became disabled on September 1, 2014, as a result of Bipolar Disorder, Hepatitis C, memory problems, Methicillin-resistant Staphylococcus aureus (MRSA), Attention Deficit Hyperactivity Disorder (ADHD), compulsive, depression, anxiety, and high blood pressure (Tr. 187, 194, 210).   On March 1, 2017, Administrative Law Judge Stacey L. Foster ("ALJ") conducted a video hearing from Paducah, Kentucky (Tr. 15, 31-33).   Plaintiff and her attorney, Sara J. Martin, participated from Owensboro, Kentucky (<u>Id.</u>).   Kenneth Boaz, B.S., an impartial vocational expert, testified during the hearing (<u>Id.</u>).

In a decision dated April 13, 2017, the ALJ evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 15-26).   At the first step, the ALJ found Plaintiff has not engaged in substantial gainful activity since September 1, 2014 the alleged onset date (Tr. 17).   At the second step, the ALJ determined that Plaintiff has the following "severe" impairments: osteoarthritis, obesity, memory impairment of gradual onset, and bipolar disorder (<u>Id.</u>).   Notably, at the second step, the ALJ also determined that Plaintiff's hepatitis C and broken right wrist and hand are "non-severe" impairments within the meaning of the regulations (Tr. 17-18).   At the third step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Tr. 18).

At the fourth step, the ALJ found Plaintiff has the residual functional capacity to perform medium work except she can occasionally climb ramps and stairs, but never ladders, ropes, or

scaffolds; she can occasionally balance, stoop, kneel, crouch, and crawl; she can understand, remember, and carry out simple, routine tasks involving little independent judgment and minimal variation; she can have occasional interaction with supervisors and coworkers, but no interaction with the public; she should avoid fast-paced production rate work; and changes in work routine or environment should be rare and gradually introduced (Tr. 20). Relying on testimony from the vocational expert, the ALJ found that Plaintiff is unable to perform any of her past relevant work (Tr. 25).

The ALJ proceeded to the fifth step where she considered Plaintiff's residual functional capacity, age, education, and past work experience as well as testimony from the vocational expert (Tr. 25-26). The ALJ found that Plaintiff is capable of performing a significant number of jobs that exist in the national economy (Id.). Therefore, the ALJ concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, from September 1, 2014 through April 13, 2017, the date of the decision (Tr. 26).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 185-86). The Appeals Council denied Plaintiff's request for review (Tr. 1-3).

## CONCLUSIONS OF LAW

### Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when

a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Cotton, 2 F.3d at 695 (quoting Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)). In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." Cohen v. Sec'y of Health & Human Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-3). At that point, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); *see* 42 U.S.C. § 405(h) (finality of the Commissioner's decision). Thus, the Court will be reviewing the decision of the ALJ, not the Appeals Council, and the evidence that was in the administrative record when the ALJ rendered the decision. 42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton v. Sullivan, 2 F.3d 692, 695-696 (6th Cir. 1993).

The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities. 42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income). The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. *See* "Evaluation of disability in general," 20 C.F.R. §§ 404.1520, 416.920. In summary, the evaluation proceeds as follows:

1) Is the claimant engaged in substantial gainful activity?

2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4) Does the claimant have the residual functional capacity to return to his or her past relevant work?

5) Does the claimant's residual functional capacity, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied Plaintiff's claim at the fifth step.

Challenged Findings

Plaintiff disagrees with Finding Nos. 3, 5, and 10 (DN 13, DN 13-1 PageID # 597-606). Regarding Finding No. 3, Plaintiff asserts that the ALJ erred in determining that Plaintiff's mental impairments do not satisfy the requirments of Listings 12.02 and 12.04 (Id. PageID # 593). As to Finding No. 5, Plaintiff contends substantial evidence does not support the ALJ's residual

functional capacity assessment (RFC) and the ALJ erred in failing to accept Plaintiff's testimony as fully credible (Id. PageID # 593).   Regarding Finding No. 10, Plaintiff asserts that there was an absence of substantial evidence to support the ALJ accepting the vocational expert's testimony as reliable (Id. PageID # 593).

A.

### 1.     Arguments of the parties

Regarding Finding No. 3, Plaintiff asserts that the ALJ erred in holding that Plaintiff's dementia and bipolar disorder do not satisfy the requirments of Listing 12.02, *Neurocognitive disorders* and Listing 12.04, *Depressive, bipolar and related disorders* (DN 13-1 PageID # 593, 602-04).   Plaintiff claims the evidence in the record demonstrates she has either marked or extreme degree of limitation in each category of the paragraph B criteria for these listings (Id.). Plaintiff asserts that the requirements of paragraph C are also met for these listings (Id.).

Defendant points out that Plaintiff has not identified the objective findings that support her claim that she has marked or extreme limitations in all of the paragraph B criteria for either listing (DN 18 PageID # 618-19).   Additionally, Defendant indicates that Plaintiff has not cited any state agency medical/psychological consultant or medical expert opinion supporting Plaintiff's claim that she met Listings 12.02 or 12.04 (Id.).   Defendant contends that the ALJ's findings are supported by substantial evidence in the record and comport with applicable law (Id.).

### 2.     Discussion

At the third step, the Administrative Law Judge is required to consider the medical severity of the claimant's impairment.   *See* 20 C.F.R. 404.1520(a)(4)(iii), 416.920(a)(4)(iii).   More specifically, the Administrative Law Judge must determine whether the claimant's impairment

meets or equals one of the listings in the Listing of Impairments, which "describes for each of the major body systems impairments that [the Social Security Administration] consider[s] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education or work experience." 20 C.F.R. § 404.1525(a), 416.925(a); *see* 20 C.F.R. Part 404, Subpart P, Appendix 1. If the claimant can satisfy all of the objective medical criteria, as well as the duration requirement, then he "will be deemed conclusively disabled, and entitled to benefits." Reynolds v. Comm'r of Soc. Sec., 424 F. App'x 411, 414 (6th Cir. 2011); Burgess v. Sec'y of Health & Human Servs., 835 F.2d 139, 140 (6th Cir. 1987); s*ee* 20 C.F.R. §§ 404.1520(d), 416.920(d).

An Administrative Law Judge "need not discuss listings that the applicant clearly does not meet." Sheeks v. Comm'r Soc. Sec., 544 F. App'x 639, 641 (6th Cir. 2013). But when the record "'raise[s] a substantial question as to whether [a claimant] could qualify as disabled' under a listing, the ALJ should discuss that listing." Id. (quoting Abbott v. Sullivan, 905 F.2d 918, 925 (6th Cir. 1990)). Notably, the Administrative Law Judge is required to "actually evaluate the evidence, compare it to the applicable Listings, and give an explained conclusion, in order to facilitate meaningful review." Reynolds, 424 F. App'x at 416. If an Administrative Law Judge offers nothing to support his or her conclusions at step three, the reviewing court cannot assess whether the Administrative Law Judge's decision is based on substantial evidence. *See* Combs v. Colvin, No. 15-104-DLB, 2016 WL 1301123, at *4 (E.D. Ky. April 1, 2016) (citing Reynolds, 424 F. App'x at 416; James v. Colvin, No. 3:11-CV-640-S, 2013 WL 4096977, at *8 (W.D. Ky. Aug. 13, 2013)). Thus, such an omission at Step 3 may constitute reversible error. Id.

Here, the ALJ thoroughly evaluated the evidence, compared it to the paragraph B and paragraph C criteria for both listings, and provided an adequate explanation why the evidence in the record supported the ALJ's conclusion that Plaintiff's mental impairments did not satisfy the the paragraph B and paragraph C criteria (Tr. 18-20). The ALJ provided a sufficient explanation to facilitate meaningful review. Moreover, the ALJ accorded great weight to the opinions of the non-examining State agency psychological advisers because they were consistent with the evidence of record (Tr. 24-25). Therefore, the opinions of the State agency psychological advisors regarding the paragraph B and paragraph C criteria (Tr. 59, 71, 84, 98) represent substantial evidence to support the ALJ's decision. 20 C.F.R. §§ 404.1527(f), 416.927(f); Social Security Ruling 96-6p, 1996 WL 374180 at *2, 3; <u>Atterbery v. Sec'y of Health & Human Servs.</u>, 871 F.2d 567, 570 (6th Cir. 1989).

Plaintiff has identified some evidence in the record that supports her position that she met the paragraph B criteria for both listings. However, The question before the Court is whether the Commissioner's decision, as reflected in the decision of the ALJ, is supported by substantial evidence. 42 U.S.C. § 405(g); <u>Smith v. Sec'y of Health and Human Servs.</u>, 893 F.2d 106, 108 (6th Cir. 1989) (citing <u>Mullen v. Sec'y of Health & Human Servs.</u> 800 F.2d 535 (6th Cir. 1986). If the answer to the above question is "yes," then the Court may not even inquire whether the record could support a decision the other way. <u>Smith</u>, 893 F.2d at 108 (citing <u>Crisp v. Sec'y of Health & Human Servs.</u>, 790 F.2d 450, 453 n. 4 (6th Cir. 1986)). After thoroughly reviewing the record, the undersigned concludes that Finding No. 4 is supported by substantial evidence in the record and comports with applicable law.

B.

1.    Arguments of the parties

As to Finding No. 5, Plaintiff contends substantial evidence does not support the ALJ's residual functional capacity assessment (RFC) and the ALJ erred in failing to accept Plaintiff's testimony as fully credible (DN 13-1 PageID # 593, 597-99, 604-05).   Plaintiff asserts that given her age (65 years) and long-standing history of degenerative joint disease and osteoarthritis, no reasonable person would find that she could perform medium work (Id.).   Yet, the ALJ found she should be able to lift and/or carry 50 pounds occasionally and 25 pounds frequently, stand and/or walk (with normal breaks) for a total of about 6 hours in an 8 hour workday, push and/or pull while lifting and/or carrying, occasionally balance, stoop, kneel, crouch, and crawl (Id.).   Plaintiff points out that if the ALJ found she was limited to sedentary or light work a GRID ruling would have directed a finding of disabled (Id.).   Plaintiff argues that the ALJ should have accepted as fully credible Plaintiff's testimony about her poor balance, her knees giving out, and the intense back, knee, and wrist pain she experiences (Id.).   Plaintiff asserts that there was no indication made by her treating providers that her subjective statements about pain and other symptoms was not credible (Id.).   Plaintiff accuses the ALJ of never providing a clear reason why he found Plaintiff's testimony less than fully credible (Id.).   Plaintiff points out that despite the fact her last x-ray depicted mild to moderate degenerative change in her knee, the ALJ mischaracterized the clinical findings as mild (Id. citing Tr. 21, 309).

Defendant contends that the ALJ's RFC assessment is supported by substantial evidence in the record (DN 18 PageID # 620-22).   Defendant points out that the ALJ relied on the treatment notes of Plaintiff's own treating physicians and the opinion of the nonexamining state agency

physician, Dr. Irlandez, who opined that Plaintiff could perform a range of medium work activity (Id.). Defendant asserts that the ALJ reasonably discounted Plaintiff's subjective allegations regarding pain and other limitations (Id. PageID # 622-24).

2.      Discussion

The residual functional capacity finding is the Administrative Law Judge's ultimate determination of what a claimant can still do despite his or her physical and mental limitations. 20 C.F.R. §§ 404.1545(a), 404.1546, 416.945(a), 416.946. The Administrative Law Judge makes this finding based on a consideration of medical source statements and all other evidence in the case record. 20 C.F.R. §§ 404.1529, 404.1545(a), 404.1546, 416.929, 416.945(a), 416.946; Social Security Ruling 96-5p; Social Security Ruling 16-3p. Thus, in making the residual functional capacity finding the Administrative Law Judge must necessarily assign weight to the medical source statements in the record and assess the claimant's subjective allegations. 20 C.F.R. §§ 404.1527(c), 404.1529; Social Security Ruling 16-3p.

Here, there is only one medical source statement in the record. Dr. Diosdado Irlandez, a non-examining state agency physician, reviewed the record and rendered his opinion on May 5, 2015 (Tr. 87-88). Doctor Irlandez opined that Plaintiff could perform a full range of medium work activity (Tr. 87-88, 100-01). The ALJ afforded great weight to Dr. Irlandez's opinion because it was consistent with the minimal clinical and objective findings in the record (Tr. 24). However, the ALJ further reduced the residual functional capacity to allow for some postural limitations because of "mild" arthritis in Plaintiff's knees[1] (Tr. 21, 24, 347). Specifically, the

---

1 Plaintiff relies on the x-rays taken on April 11, 2014, when she challenges the ALJ's finding that Plaintiff has "'mild' arthritis in her bilateral knees (DN 13-1 PageID # 598, citing Tr. 309). The ALJ noted that those x-rays

ALJ found that Plaintiff can occasionally climb ramps and stairs, but never ladders, ropes, or scaffolds; and can occasionally balance, stoop, kneel, crouch, and crawl (Tr. 20). Because Dr. Irlandez's opinions are consistent with the evidence of record, his opinions represent substantial evidence to support the ALJ's decision. *See* 20 C.F.R. §§ 404.1527(f), 416.927(f); Social Security Ruling 96-6p, 1996 WL 374180 at *2, 3 (1996); Atterbery v. Sec'y of Health & Human Servs., 871 F.2d 567, 570 (6th Cir. 1989).

Notably, Plaintiff has not demonstrated that Dr. Irlandez's opinion is inconsistent with objective medical evidence in record. Instead, Plaintiff relies on her age and her subjective statements about pain and other limitations to substantiate her claim that no reasonable person would have found she could perform medium work. However, Plaintiff's subjective statements about her pain and other symptoms will not, taken alone, establish that she is disabled; there must be medical signs and laboratory findings that show the existence of a medical impairment that could reasonably be expected to give rise to the pain and other symptoms alleged. 20 C.F.R. §§ 404.1529(a), 416.929(a).

In determining whether a claimant suffers from debilitating pain and other symptoms, the two-part test set forth in Duncan v. Sec'y of Health & Human Servs., 801 F.2d 847, 853 (6th Cir. 1986) applies. First the Administrative Law Judge must examine whether there is objective medical evidence of an underlying medical condition. If there is, then the Administrative Law Judge must determine: "(1) whether objective medical evidence confirms the severity of the

---

"revealed mild to moderate medial femoral tibial joint degenative change" (Tr. 21, citing Tr. 309). The ALJ also noted that x-rays taken on November 14, 2014, revealed "mild bilateral arthritic changes" in Plaintiff's bilateral knees (Tr. 21 citing Tr. 347). The ALJ found that Plaintiff had "mild" arthritis in her bilateral knees after considering both sets of x-rays, the minimal clinical findings, and Plaintiff's own comments (Tr. 21).

alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such severity that it can reasonably be expected to produce the alleged disabling pain." Id.

The ALJ noted although Plaintiff was prescribed narcotics for knee and back pain, the only diagnostic imaging in the record concerned her knees (Tr. 22). Further, the ALJ observed that the clinical findings for these impairments were minimal (Id.). The ALJ concluded Plaintiff's statements concerning the intensity, persistence, and limiting effects of these conditions were not entirely consistent with the medical evidence and other evidence in the record (Tr. 20-22). Since the reported pain and other symptoms suggested impairments of greater severity than can be shown by objective medical evidence, the ALJ appropriately considered other information and factors that may be relevant to the degree of pain alleged (Tr. 20-25). 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). For example, the ALJ considered Plaintiff's level of daily activity in assessing her subjective statements regarding pain and other symptoms (Tr. 22-25). *See* 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i); Bogle v. Sullivan, 998 F.2d 342, 348 (6th Cir. 1993); Blacha v. Sec'y of Health & Human Servs., 927 F.2d 228, 231 (6th Cir. 1990) The ALJ also considered whether there were any inconsistencies between Plaintiff's subjective statements and the rest of the evidence in the record (Id.). *See* 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4).

The ALJ found from the medical record and Plaintiff's testimony that Plaintiff does not suffer pain to the extent she testified. In the absence of detailed corroborating evidence of Plaintiff's subjective complaints, it becomes the duty of the Administrative Law Judge to resolve the issue of Plaintiff's credibility. Since tolerance of pain and other symptoms is a highly individualized matter, and a determination of disability based on pain necessarily depends on the

credibility of the claimant, the conclusion of the Administrative Law Judge, who has the opportunity to observe the claimant's demeanor, "should not be discharged lightly." Houston v. Sec'y of Health & Human Servs., 736 F.2d 365, 367 (6th Cir. 1984) (citing Beavers v. Sec'y of Health, Educ. & Welfare, 577 F.2d 383 (6th Cir. 1978)). The undersigned concludes that the ALJ's findings regarding Plaintiff's credibility are supported by substantial evidence and fully comport with applicable law.

## C.

### 1.    Arguments of the parties

Regarding Finding No. 10, Plaintiff asserts that there was an absence of substantial evidence to support the ALJ accepting the vocational expert's testimony as reliable (DN 13-1 PageID # 593, 599-602). Plaintiff argues that the vocational expert relied on obsolete job descriptions in the Dictionary of Occupational Titles (DOT) when he testified that Plaintiff was able to do the following jobs: paper shredder (DOT 929.687-022); dryer attendant (DOT 581.686-018); and house cleaner (DOT 301.687-014) (Id.). Plaintiff points out that the DOT job description for paper shredder was last updated in 1977, dryer attendant was last updated in 1977, and house cleaner was last updated in 1981 (Id.). Plaintiff asserts that O*NET, an up-to-date source of occupational information, indicates each of these jobs now has an SVP rating of 4-6 which is much higher than the SVP rating of 2 set forth in the DOT and relied upon by the vocational expert in his testimony (Id.). Plaintiff argues because the the vocational expert relied on obsolete DOT job descriptions that have inaccurate SVP ratings, his testimony is unreliable regarding the three jobs (Id.). Further, Plaintiff asserts that the vocational expert failed to identify a significant number of jobs at the regional level (Id.).

Defendant contends that substantial evidence supports the ALJ's finding that Plaintiff could perform a significant number of jobs that existed in the national economy (DN 18 PageID # 624-27). Alternatively, Defendant asserts that Plaintiff forfeited this obsolescence argument because he failed to make it before the ALJ (Id. citing Kepke v. Comm'r of Soc. Sec., 636 F. App'x. 625, 636 (6th Cir. 2016)). Defendant also points out that Plaintiff circumvented the vocational expert's opportunity to respond to this obsolescence question by failing to raise it on cross-examination (Id.). Further, Defendant argues that the vocational expert's uncontroverted testimony provided substantial evidence to support Finding No. 10 because the testimony did not conflict with information in the DOT (Id. citing Social Security Ruling 00-4p, Lindsley v. Comm'r of Soc. Sec., 560 F.3d 601, 605-06 (6th Cir. 2009), and Isaac v. Colvin, No. 3:13-cv-125, 2014 WL 2931579, at *12 (S.D. Ohio, June 27, 2014)). Defendant contends that the obligation falls on Plaintiff's counsel, not the ALJ, to bring out conflicts with the DOT through cross-examination (Id. citing Isaac, 2014 WL 2931579, at *12-13 and SSR 00-4p). Defendant reasons the vocational expert's testimony constituted substantial evidence to support Finding No. 10 because the ALJ complied with SSR 00-4p by asking the vocational expert to explain any conflicts between his testimony and the DOT (Id.). Additionally, Defendant asserts that the vocational expert identified a "significant" number of jobs in the national economy in response to the ALJ's hypothetical question (Id.).

2.    Discussion

The Court will begin with Defendant's argument that Plaintiff forfeited this claim by failing to raise it during the administrative hearing through cross-examination of the vocational expert. First, Defendant's reliance on Kepke v. Comm'r of Soc. Sec., 636 F. App'x. 625, 636 (6th Cir.

2016) is misplaced.    Kepke's argument before the court concerned the Administrative Law Judge's failure to include a specific physical limitation in the hypothetical questions posed to the vocational expert.[2]    Id.    The Sixth Circuit held "[b]ecause Kepke failed to probe this alleged deficiency at the ALJ hearing, she forfeited this argument."    Id.    Implicit within this holding is the Sixth Circuit's recognition that Kepke knew about this physical limitation at the time of the administrative hearing and, therefore, she could and should have addressed the purported deficiency through cross-examination of the vocational expert.    Id.

In contrast to the circumstances in Kepke, Plaintiff had no inkling that the vocational expert would identify paper shredder (DOT 929.687-022), drier attendant (DOT 581.686-018), and house cleaner (DOT 301.687-014) in response to the ALJ's hypothetical question (Tr. 51-52).    Thus, prior to the administrative hearing, Plaintiff could not have conducted research about these three jobs on the DOT and O*NET[3].    Moreover, because there are literally thousands of jobs identified in the DOT[4], it is unlikely that Plaintiff had sufficient personal knowledge about these three job descriptions to effectively cross-examine the vocational expert "on the fly."    Therefore, to effectively cross-examine the vocational expert about the three jobs, Plaintiff would have needed to conduct research on the DOT and O*NET after the vocational expert identified these three jobs. However, it would be impractical to conduct such research during the hearing.    Consider for

---

2  The hypothetical questions to the vocational expert failed to specify the frequency of the claimant's need to alternate between sitting and standing.    Kepke v. Comm'r of Soc. Sec., 636 F. App'x. 625, 636 (6th Cir. 2016).

3  The United States Department of Labor replaced the DOT with O*NET, a database that is continually updated based on data collection efforts that began in 2001.    https://www.onetcenter.org/dataCollection.html; and https://www.oalj.dol.gov/LIBDOT.HTM

4  https://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOTINTRO.HTM

example, the paper shredder (DOT 929.687-022) occupation identified by the vocational expert (Tr. 52). The DOT occupational title for 929.687-022 is actually "LABORER, SALVAGE (any industry) alternate titles: reclaimer; salvager; trash collector; waste collector" and this job definition has not been updated since 1977.[5] Typing in "929.687-022, Laborer, Salvage" in the DOT Crosswalk Search Option on O*NET provided several options but none of them appear to be the same occupation.[6] A more time consuming independent search of O*NET under the heading "Green Ecomomy Sector" and the subcategory "Recycling and Waste Reduction" revealed "51-9199.01 – Recycling and Reclamation Workers" which may provide the information necessary to refine the vocational expert's testimony through cross-examination.[7] In sum, this part of Defendant's waiver argument is without merit because it places an unreasonable burden on Plaintiff.

Defendant's attempt to rebut Plaintiff's argument with Social Security Ruling 00-4p and cases such as Lindsley v. Comm'r of Soc. Sec., 560 F.3d 601, 605-06 (6th Cir. 2009) and Isaac v. Colvin, No. 3:13-cv-125, 2014 WL 2931579, at *12-13 (S.D. Ohio, June 27, 2014) is misguided. The purpose of this policy ruling is to emphasize that before deciding whether a vocational expert's testimony supports a disability determination, Administrative Law Judges must identify and obtain a reasonable explanation for any conflicts between the occupational evidence provided by the vocational expert and information in the DOT, including its companion publication, the Selected

---

5 https://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOT09B.HTM

6 For example, the Crosswalk Search Option pulled up "51-9198.00 Helpers-Production Workers" and "51-9061.00 Inspectors, Testors, Sorters, Samplers, and Weighers"
https://www.onetonline.org/crosswalk/DOT?s=DOT+929.687-022&g=Go

7 https://www.onetonline.org/link/summary/51-9199.01

Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (SCO). SSR 00-4p, 2000 WL 1898704, at *1 (Dec. 4, 2000); Lindsley, 560 F.3d at 606; Martin v. Comm'r of Soc. Sec., 170 F. App'x 369, 374 (6th Cir. 2006). This policy ruling does not impose a duty on Administrative Law Judges to further interrogate a vocational expert when he or she testifies that there is no conflict between the vocational opinion and information in the DOT. See SSR 00-4p; Lindsley, 560 F.3d at 606. Further, when a vocational expert bases his opinion on the contents of the DOT and the Administrative Law Judge relies on that testimony, SSR 00-4p does not impose a duty on the Administrative Law Judge to resolve conflicts between the vocational expert's testimony and information from a different vocational publication. See Poe v. Comm'r of Soc. Sec., 342 F. App'x 149, 158 (6th Cir. 2009) (the claimant's own vocational expert based his opinion on information from the Occupational Outlook Handbook). As the Ninth Circuit incitefully explained, "[SSR 00–4p] merely provides that where there is a conflict between the DOT and another source, and the ALJ relies on the other source, the ALJ must explain his reasons for doing so." Lee v. Barnhart, 63 F. App'x. 291, 292–93 (9th Cir.2003). Because such circumstances do not exist here, Defendant's reliance on SSR 00-4p is misguided.

The Court will now focus on the merits of Plaintiff's claim and Defendant's response. At the fifth step, the Commissioner has the burden of demonstrating that a "significant" number of jobs exist in the local, regional and national economies that the claimant can perform given her residual functional capacity, age, education, and past work experience. 20 C.F.R. § 404.1520(a)(4)(v) and (g); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 684 (6th Cir. 1992); Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990); Allen v. Califano, 613 F.2d 139, 145 (6th Cir. 1980). Essentially, the Commissioner can satisfy this burden in one of two ways.

When a claimant's age, education, previous work experience, and residual functional capacity coincide with all of the criteria of a particular Grid Rule in Appendix 2 of the regulations, referred to as the medical-vocational guidelines, the Commissioner may rely on that Grid Rule to meet this burden. 20 C.F.R. §§ 404.1569, 416.969; Grid Rule 200.00; Born v. Sec'y of Health & Human Servs., 923 F.2d 1168, 1174 (6th Cir. 1990);Moon, 923 F.2d at 1181. However, when a claimant's residual functional capacity does not coincide with the criteria of a particular Grid Rule, the Commissioner is limited to using the Grid Rule as a framework in the decision making process and must make a non-guideline determination based on the testimony of a vocational expert. 20 C.F.R. § 404.1566(e); Born, 923 F.2d at 1174; Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987); Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 531, 535 (6th Cir. 1981), cert. denied, 461 U.S. 957 (1983).

Here, the ALJ found that Plaintiff's residual functional capacity did not coincide with the criteria of Grid Rule 203.07 because Plaintiff could not perform a full range of medium work (Tr. 26). Therefore, the ALJ used Grid Rule 203.07 as a framework in the decision making process and made a non-guideline determination based on the vocational expert's testimony (Id.). In response to the ALJ's hypothetical question, the vocational expert testified that the hypothetical individual could perform work as a paper shredder (DOT 929.687-022) which is medium in exertional level, unskilled with an SVP of two, and there are 43,000 such jobs in the national economy; a drier attendant (DOT 581.686-018) which is medium in exertional level, unskilled with an SVP of one, and there are 22,000 such jobs in the national economy; and a house cleaner (DOT 301.687-014) which is medium in exertional level, unskilled with an SVP of two, and there are 300,000 such jobs in the national economy (Tr. 51-52). Pursuant to SSR 00-4p, the ALJ

confirmed that the vocational expert's testimony was consistent with the information contained in the DOT (Tr. 52). Relying on the vocational expert's testimony in response to the hypothetical question, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed considering her age, education, work experience, and residual functional capacity (Tr. 26).

The Sixth Circuit has made clear that there is no "magic number" that qualifies as "significant" for the purposes of satisfying this prong of the disability inquiry. Hall v. Bowen, 837 F.2d 272, 275 (6th Cir. 1988). Instead, the Court must make a fact-specific inquiry that is guided by common sense:

> We are not blind, however, to the difficult task of enumerating exactly what constitutes a "significant number." We know that we cannot set forth one special number which is to be the boundary between a "significant number" and an insignificant number of jobs. . . . A judge should consider many criteria in determining whether work exists in significant numbers, some of which might include: the level of claimant's disability; *the reliability of the vocational expert's testimony*; the reliability of the claimant's testimony; the distance claimant is capable of traveling to engage in the assigned work; the isolated nature of the jobs; the types and availability of such work, and so on. The decision should ultimately be left to the trial judge's common sense in weighing the statutory language as applied to a particular claimant's factual situation.

Id. (emphasis added). Here, Plaintiff asserts that the factors set out in Hall raise doubt as to whether the number of jobs identified by the vocational expert is significant. Specifically, Plaintiff asserts that the vocational expert's testimony is not reliable because it is based on obsolete occupational descriptions in the DOT.

The vocational expert based his testimony on three job descriptions contained in the DOT, a document published by the United States Department of Labor ("DOL") that was last updated in

19

1991.[8]   The regulations provide that the Commissioner "will take administrative notice of reliable job information available from various governmental and other publications."   20 C.F.R. §§ 404.1566(d), 416.966(d); Social Security Ruling 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000). The regulations include the DOT within their non-exhaustive list of examples of sources from which reliable job information is available.   20 C.F.R. §§ 404.1566(d)(1)-(5), 416.966(d)(1)-(5); *see* Wennersten v. Colvin, No. 12-cv-783-bbc, 2013 WL 4821474, at * (W.D. Wis. Sept. 10, 2013) ("the list is not exclusive").   Thus, a vocational expert may base his testimony on job descriptions in the DOT.   However, the Sixth Circuit, albeit in an unpublished opinion, has made the following cautionary statement: "*common sense dictates* that when such descriptions appear obsolete, a more recent source of information should be consulted."   Cunningham v. Astrue, 360 F. App'x 606, 615 (6th Cir. 2010) (emphasis added).

The DOT indicates the paper shredder (DOT 929.687-022) occupational definition has not been updated since 1977[9], the drier attendant (DOT 581.686-018) occupational definition has not been updated since 1977[10], and the house cleaner (DOT 301.687-014) occupational definition has not been updated since 1981[11].   Thus, when the vocational expert responded to the ALJ's hypothetical question on March 1, 2017 (Tr. 52), his testimony appears to have been based on occupational descriptions in the DOT that were approximately 40 and 36 years old.

---

8  https://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOTSPEC.HTM

9  https://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOT09B.HTM

10  https://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOT05G.HTM

11  https://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOT03A.HTM

At the time of Plaintiff's administrative hearing before the ALJ, more current occupational descriptions were available. Specifically, the DOL replaced the DOT with O*NET, a database that is continually updated based on data collection efforts that began in 2001.[12] *See* Cunningham, 360 F. App'x at 616; Johnson v. Berryhill, No. 4-16-CV-00106-HBB, 2017 WL 245326, *8 (W.D. Ky. June 6, 2017). Thus, like the Sixth Circuit in Cunningham, this Court will compare the job descriptions in the DOT with those set forth in O*NET to determine whether the vocational expert based his testimony on obsolete job descriptions.

As previously mentioned although the vocational expert identified paper shredder (DOT 929.687-022) in response to the hypothetical question (Tr. 52), the DOT occupational definition at issue is actually "929.687-022 LABORER, SALVAGE (any industry) alternate titles: reclaimer; salvager; trash collector; waste collector" and it has an SVP of 2. [13] The most similar occupational definition in O*NET is "51-9199.01 – Recycling and Reclamation Workers" but it has an SVP range of "4.0 to < 6.0". [14] But, as evidenced by the vocational expert's testimony[15], an SVP range this high would be inconsistent with an individual limited to "simple, routine tasks involving little independent judgment, and minimal variation" (Tr. 51-52). Because the occupational descriptions in the DOT and O*NET are tangibly different, the Court concludes the vocational expert's reliance on the 40 year old DOT job description does not warrant a presumption of reliability. For this reason, the paper shredder position identified by the vocational expert will

---

12 https://www.onetcenter.org/dataCollection.html

13 https://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOT09B.HTM

14 https://www.onetonline.org/link/summary/51-9199.01

15 The vocational expert identified occupations with an SVP of 1 or 2 (Tr. 52).

not be considered in assessing whether a substantial number of jobs exists that Plaintiff can still perform despite his limitations.

The DOT occupational description for a drier attendant (garment) (DOT 581.686-018) reads:

> Hangs garments, such as skirts and suits, on hooks suspended from chain conveyor that carries garments through curing oven to dry and cure finish applied to garment. Removes cured garments from conveyor onto rack for further processing.
> *GOE: 06.04.40 STRENGTH: M GED: R1 M1 L1 SVP: 1 DLU: 77*

DOT (1991), *available at* https://www.oalj.dol.gov/LIBDOT.HTM (follow the "Processing Occupations: 570.683-014 to 583.132-010" hyperlink). The DOT Crosswalk Search Option for O*NET revealed a comparable job description "53-7063.00 – Machine Feeders and Offbearers", which mentions "Dryer Feeder" but it has an SVP range of "4.0 to < 6.0". [16] As explained above, this is a higher SVP than permitted by the ALJ's hypothetical question (Tr. 51). Because the occupational descriptions in the DOT and O*NET are tangibly different, the Court concludes the vocational expert's reliance on the 40 year old DOT job description does not warrant a presumption of reliability. For this reason, the drier attendant position identified by the vocational expert will not be considered in assessing whether a substantial number of jobs exists that Plaintiff can still perform despite his limitations.

The vocational expert identified house cleaner (DOT 301.687-014) in response to the hypothetical question (Tr. 52). The DOT occupational definition at issue is actually "301.687-014 DAY WORKER (domestic ser.)". The DOT Crosswalk Search Option for O*NET revealed

---

[16] https://www.onetonline.org/link/summary/53-7063.00

a comparable job description "37-2012.00 Maids and Housekeeping Cleaners" but it has an SVP range of "4.0 to < 6.0".[17] As explained above, this is a higher SVP than permitted by the ALJ's hypothetical question (Tr. 51). Because the occupational descriptions in the DOT and O*NET are tangibly different, the Court concludes the vocational expert's reliance on the 36 year old DOT job description does not warrant a presumption of reliability. For this reason, the house cleaner position identified by the vocational expert will not be considered in assessing whether a substantial number of jobs exists that Plaintiff can still perform despite her limitations.

Thus, the discrepancies between the DOT and O*NET present sufficient doubt as to the reliability of the vocational expert's testimony to warrant a conclusion that the ALJ's step five determination was not supported by substantial evidence. After all, "[i]f the only jobs that the applicant is physically and mentally capable of doing no longer exist in the American economy (such as pin setter, phrenologist, leech collector, milkman, pony express rider, and daguerreotypist), the applicant is disabled from working, and likewise, as a realistic matter, if there is an insignificant number of such jobs." Herrmann v. Colvin, 772 F.3d 1110, 1113 (7th Cir. 2014). Notably, however, the undersigned is not concluding that these positions are obsolete, nor that they do not exist in significant numbers. Rather, this is a recognition that Plaintiff has created sufficient doubt to merit remand so that a vocational expert can determine whether these positions, as performed in the modern economy, are still occupations available to the Plaintiff given her age, experience, education, and residual functional capacity.

---

17 https://www.onetonline.org/link/summary/37-2012.00

In light of the above conclusion, the final decision of the Commissioner will be reversed and this matter will be remanded, pursuant to sentence four of 42 U.S.C. § 405(g), to the Commissioner for reconsideration of whether the DOT listings, specifically the paper shredder (DOT 929.687-022), drier attendant (DOT 581.686-018), and house cleaner (DOT 301.687-014) definitions, were reliable in light of the economy as it existed at the time of the hearing before the ALJ. *See* Faucher v. Sec'y of Health & Human Servs., 17 F.3d 171, 175 (6th Cir. 1994) (sentence four of 42 U.S.C. § 405(g) authorizes a post judgment remand).

<u>ORDER</u>

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **REVERSED.**

**IT IS FURTHER ORDERED** that this matter is **REMANDED**, pursuant to 42 U.S.C. § 405(g), to the Commissioner for further proceedings.

Copies:       Counsel